

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. C. J. Wilde
County Auditor
Nueces County
Corpus Christi, Texas

Dear Sir:

Opinion No. 0-5397
Re: Letting of additional contracts
for road construction without
the usual advertising for bids.

Your request for an opinion on the above matter has been received and carefully considered. We quote from said request, as follows:

"Under date of August 23, 1944, Nueces County did let contracts for repair and construction work on approximately 110 miles of existing roads. The total sum of said contract amounted to $204,588.39.

"Standard specifications, such as used by the State Highway Department, were submitted to each of the contractors bidding on the work to be done.

"Under Item 4, 'Scope of Work', Section 3, Changes and Alterations of the Standard Specifications, a change was made in the regular specifications to read, 'When such changes and alterations increase or decrease the total work to be done in excess of 20%,' changed to read, 'When such changes and alterations increase or decrease the total work to be done of any one item in excess of 50%,'.

"Section 4 of item 4 reads as follows:

Hon. C. J. Wilde, Page 2

"'Additional work made necessary by changes and alterations of plans or for other reasons, for which no prices are provided in the contract, shall be defined as "Extra Work" and shall be performed by the contractor in accordance with these specifications and as directed; provided, however, that before any extra work is begun a "Supplemental Agreement" shall be executed, or a written order issued by the Engineer to do the work on a "Force Account" basis, as hereinafter provided.'

"Under date of October 9th, the County Engineer did present the Commissioners' Court with a Supplemental Agreement, a copy of which is attached hereto, whereby the contractor on the original contract did waive any change in unit price. This supplemental agreement extended the work on two of the roads contracted for in the original contract; however, the third road covered by the supplemental agreement, namely project number 2-16-56, Bluntzer-Sandia Road, was not included in the original contract. The contention of this office is that there was a possibility of extending the road projects numbers 2-17-54 and 2-18-54, even though we feel that it does not come under the ordinary over-run or under-run nor would it be covered by extra work in the original contract for these said roads as both of the items mentioned here and above were extentions of the original contract and would not be covered by the ordinary over-run or under-run or changes in specifications in the original contract.

"With reference to road project number 2-16-56, no part of this road was included in the original project and we have, this day, notified the County Engineer and the Commissioners' Court that payment would not be made on this contract until this office was fully satisfied that we had the legal right to make a supplemental agreement covering the contract of an entirely new project without first advertising for bids covering said project, even though the contractor waived any change in the unit price.

"Enclosed herewith find the supplemental agreement, also copy of plans, Engineer's estimate for projects 2-16-56, 2-17-54, and 2-18-54. We ask that you please return these for our files as soon as you have finished with them.

"This office will appreciate having your opinion on this matter at an early date in view of the fact that other projects are under way and if your ruling is that we would be allowed to contract this work without having called for bids, the early receipt of your reply would expedite the work."

Section 1 of Item 4 of the original specifications for the work referred to by you, which sets out the "INTENT OF PLANS AND SPECIFICATIONS", reads, in part, as follows:

"It is the intent of the plans and specifications to describe a completed work to be performed under the contract. . . ."

You enclose with your request copy of a letter dated September 25, 1944, from your County Engineer, Jas. V. Curnutte, to D. W. Risinger, Commissioner Precinct No. 2, which reads in part as follows:

"As requested by you I prepared a revised estimate of the work in Precinct #2 as shown by the estimate sheet attached hereto.

"This revised estimate includes an extension to Project 2-17-54, which extension includes reshaping of the sub-grade and the placing of caliche base and asphalt surface treatment on the 4.8 miles between the Banquete North Road and the East end of the Project 2-17-54 upon which the contract was awarded. The estimate also includes an extension to Project 2-18-54, said extension being the placing of a surface treatment on that portion of the old concrete slab upon which an asphaltic concrete surface was placed in 1942. In addition to the above extensions an estimate on the Bluntzer-Sandia Road, Project 2-16-56 has been included. The estimated cost at unit contract price - 10% of the two extensions and the additional Project shown above amounts to $99,230.43."

Hon. C. J. Wilde, Page 4

Reference to the engineer's estimates enclosed by you and which are referred to in that part of the engineer's letter to Mr. Risinger above set out shows that the estimated costs of the extension to Project 2-17-54 is $42,029.63, that the estimated costs of the extension to Project 2-18-54 is $4,146.15 and that the estimated cost of Project 2-16-56 is $53,054.65.

Section 2, of Article 2368a of Vernon's Annotated Civil Statutes of Texas, is in part, as follows:

"No county acting through its Commissioners' Court, and no city in this State, shall hereafter make or enter into any contract or agreement for the construction of any public building, or the prosecution and completion of any public work requiring or authorizing any expenditure in excess of Two Thousand Dollars ($2,000.00), creating or imposing an obligation or liability of any nature or character upon such county, or any subdivision of such county, or upon such city, without first submitting such proposed contract or agreement to competitive bids. . . .

"Any and all such contracts or agreements hereafter made by any county or city in this State, without complying with the terms of this Section, shall be void, and shall not be enforceable in any Court of this State, and the performance of same and the payment of any money thereunder may be enjoined by any property taxpaying citizen of such county or city."

In the case of Limestone County vs. Knox, et al, 234 S. W. 131, the Court had under consideration a suit to cancel a contract made by a county commissioner of Limestone County for the purchase of machinery of a value in excess of $2,000.00 without having submitted said purchase price and contract to competitive bids, the contention being made that under Articles 2268a and 2268b, which contain practically the same requirements as are now contained in Section 2 of Article 2368a, above set out, said contract was void. There was also involved in said contract as a part payment of said purchase price the sale by said county commissioner of certain mules and other property belonging to Limestone County at a price in excess of $2,000.00. In passing upon said contention, the Court held as follows:

"That the provisions of article 2268a above quoted were not complied with by the commissioners' court of Limestone county in the transaction complained of by the appellant is undisputed. Neither the purchase of the machinery nor the sale or exchange of the mules, wagon, and harness was submitted to competitive bids, and no notice that such a purchase and sale or exchange was contemplated, or would be made by the commissioners' court, was given in a newspaper or by posting notices at the courthouse door. The contract entered into involved the expenditure or payment of more than $2,000 out of the funds of Limestone county and was clearly inhibited by the statute mentioned unless the requirements thereof were complied with. The language of the statute is clear, unambiguous, and emphatic. The legislative intent and purpose is manifest, and the law should be observed and given full effect by the commissioners' courts of the state. The penalty for failure to comply with its terms is prescribed in article 2268b, quoted above. That penalty for such failure is that the contract shall be void and shall not be enforceable in any court of this state. The facts showing a failure to comply with the legislative act in question, in the present instance, were fully alleged in the appellant's petition and established by the uncontroverted testimony, and the appellant was entitled, we believe, to the relief prayed for in its petition, and authorized by the statute, namely, that the performance of the contract and payment of any money thereunder be enjoined.

"We also are of the opinion that since the appellant's mules, wagon, and harness were disposed of by the commissioners' court under the contract in question, a contract inhibited by law, the entire transaction was void and said property or its value recoverable by the county. . . ."

In the case of Kelly v. Cochran County, et al., 82 S. W. (2d) 641, the Commission of Appeals was passing on the validity of a contract executed by Cochran County in twenty identical instruments, each covering a 1/20th part of a continuous stretch of road construction, the evident purpose of having said contract so executed being to avoid compliance with

Hon. C. J. Wilde, Page 6

the requirements to advertise for submission of competitive bids under a contract requiring the expenditure of more than $2,000.00 of county funds. The Court held that, since the purpose of the commissioners' court in making the contract in the form in which it was executed, was to avoid compliance with the mandatory advertising requirements of the law, said contracts were subject to cancellation and were void.

It appearing that the projects described in your request are for new and additional work not covered or contemplated by the original contract, and that the estimates of the costs thereof, whether considered as a whole or as separate projects, is in excess of $2,000.00, it is our opinion that a contract or contracts therefor cannot be let without same being submitted to competitive bids as provided for in Section 2 of said Article 2368a.

Trusting that this satisfactorily answers your inquiry, we are

APPROVED NOV 13 1944

ATTORNEY GENERAL OF TEXAS

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Jas. W. Bassett
    Jas. W. Bassett
        Assistant

JWB:fo

